## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

**DAWN HAMPSON,**

        **Plaintiff,**

v.

**STATE FARM MUTUAL AUTO
INSURANCE COMPANY,**

        **Defendant.**

Civil Action No.: 12-cv-0258 (BKS/CFH)
Hon. Brenda K. Sannes, U.S.D.J.

---

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTIONS *IN LIMINE*

---

MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
Attorneys for Defendant
State Farm Mutual Auto Insurance Company

570 Broad Street
Suite 1500
Newark, New Jersey  07102

Francis X. Dee,          – and –
   Of Counsel and
   On the Brief.         88 Pine Street
                       24th Floor
Stephen F. Payerle,     New York, New York 10005
   On the Brief.        (212) 483-9490

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT

      POINT I

      PLAINTIFF CANNOT EXCLUDE EVIDENCE OF HER SOCIAL SECURITY
      DISABILITY APPLICATION, DETERMINATION, AND BENEFITS .........................1

          A.     Plaintiff's SSDI Application and Determination Are
                  Relevant and Admissible ..........................................................................2

          B.     Plaintiff's Receipt of SSDI Benefits Is Not Barred by
                  the Collateral Source Rule .......................................................................4

      POINT II

      PLAINTIFF'S MOTION TO INCLUDE MEDICAL TESTIMONY
      AND MEDICAL RECORDS .........................................................................................7

      POINT III

      PLAINTIFF'S MOTION TO INCLUDE HER OWN TESTIMONY
      ON EMOTIONAL DISTRESS DAMAGES....................................................................8

      POINT IV

      PLAINTIFF'S MOTION TO INCLUDE DEPOSITION TESTIMONY
      OF LORI ERCOLINI AND RENE STREICHER.............................................................9

      POINT V

      PLAINTIFF'S MOTION TO INCLUDE EMAILS FROM
      CERTAIN EMPLOYEES...............................................................................................11

      POINT VI

      PLAINTIFF'S MOTION TO EXCLUDE ANY EVIDENCE OF
      LACK OF AWARENESS OF HER ALLEGED DISABILITY/
      SERIOUS MEDICAL CONDITION .............................................................................14

POINT VII

PLAINTIFF'S MOTION TO EXCLUDE EVIDENCE THAT SHE
FAILED TO PURSUE STATE FARM'S ADA ACCOMMODATION
REQUEST PROCESS ..................................................................................................15

POINT VIII

PLAINTIFF'S MOTION TO EXCLUDE EVIDENCE
ON UNDUE HARDSHIP...............................................................................................17

POINT IX

PLAINTIFF'S MOTION TO EXCLUDE REFERENCE
TO DISMISSED CLAIMS.............................................................................................18

CONCLUSION.......................................................................................................................19

## TABLE OF AUTHORITIES

### Cases

*Bemis v. Edwards,*
    45 F.3d 1369 (9th Cir. 1995) ...................................................................................14

*Clements v. Norfolk Southern Ry. Co.,*
    2013 WL 255408 (M.D. Ga. 2013)..............................................................................6

*Cleveland v. Policy Mgmt. Sys. Corp.,*
    526 U.S. 795 (1999).........................................................................................2, 3, 4, 6

*Dailey v. Societe Generale,*
    108 F.3d 451 (2d Cir.1997).........................................................................................4

*Davis v. George Washington University,*
    26 F.Supp.3d 103, 115 (D.D.C. 2014) ......................................................................17

*Djangmah v. Falcione,*
    2013 WL 6388364 (S.D.N.Y. Dec. 5, 2013) ...............................................................8

*Eichel v. New York Central R.R. Co.,*
    375 U.S. 253 (1963)..........................................................................................4, 5, 6

*Flowers v. Komatsu Min. Systems, Inc.,*
    165 F.3d 554 (7th Cir. 1999) .......................................................................................4

*Gladden v. Henderson Co.,*
    385 F. 2d 480 (3d Cir. 1967).......................................................................................5

*Johnson v. Zerbst,*
    304 U.S. 458 (1938)..................................................................................................15

*Lorraine v. Markel American Ins. Co.,*
    241 F.R.D. 534 (D. Md. 2007)..................................................................................13

*McBride v. BIC Consumer Prods. Mfg. Co.,*
    583 F.3d 92 (2d Cir. 2009).........................................................................................16

*McGrath v. Consolidated Rail Corp.,*
    136 F.3d 838 (1st Cir. 1998).......................................................................................6

*Mills v. Energy Transp. Corp.,*
    29 Fed. Appx. 744 (2d Cir. 2002)......................................................................1, 5, 6

*Mitchell v. Washingtonville Cent. School Dist.,*
    190 F.3d 1 (2d Cir. 1999)................................................................................1, 2, 3, 4, 6

*Mobasher v. Bronx Community College,*
   269 Fed.Appx. 71 (2d Cir. 2008) ..........................................................11

*Morse v. JetBlue Airways Corp.,*
   2014 WL 2587576 (E.D.N.Y. 2014) .........................................................4

*New York v. Microsoft,*
   2002 WL 649951 (D.D.C. Apr. 12, 2002) ...............................................13

*Nugent v. St. Lukes-Roosevelt Hosp. Ctr.,*
   303 Fed.Appx. 943 (2d Cir. 2008) .........................................................16

*Rodriguez v. Village Green Realty, Inc.,*
   788 F.3d 31 (2d Cir. 2015) .......................................................................8

*Santa Maria v. Metro-North Commuter R.R.,*
   81 F.3d 265 (2d Cir. 1996) .................................................................5, 7

*Saulpaugh v. Monroe Community Hospital,*
   4 F.3d 134 (2d Cir. 1992) .........................................................................4

*Schlant v. Victor Belata Belting Co.,*
   2000 WL 1737945 (W.D.N.Y. Nov. 9, 2000) ...........................................3

*Thornley v. Penton Publishing, Inc.,*
   104 F.3d 26 (2d Cir. 1997) ...................................................................3, 4

*Tutora v. Correctional Medical Care, Inc.,*
   2012 WL 1898871 (N.D.N.Y. April 30, 2012) .........................................8

*U.S. v. Parse,*
   789 F.3d 83 (2d Cir. 2015) .....................................................................15

*United States v. Ferber,*
   966 F.Supp. 90 (D.Mass. 1997) .......................................................13, 14

*United States v. Freidin,*
   849 F.2d 716 (2d Cir.1988) ....................................................................13

## **Statutes**

*American with Disabilities Act* (ADA),

   42 U.S.C. § 12111(8) ...............................................................................3

## **Rules**

Federal Rules of Civil Procedure

      Rule 56 ...................................................................................................................18

Federal Rules of Evidence

      Rule 403 .........................................................................................6, 7, 9, 11

      Rule 803 ....................................................................................8, 9, 12,13, 14

      Rule 902 ...............................................................................................................8

## PRELIMINARY STATEMENT

Defendant, State Farm Mutual Automobile Insurance Company, Inc. ("State Farm"), submits this Memorandum of Law in opposition to Plaintiff's motions *in limine*, in anticipation of the trial currently scheduled to commence on October 26, 2015.  Plaintiff's motions to exclude or include various categories of evidence are contrary to established law, lack foundation or specificity, seek to exclude evidence on matters that the Court identified as factual questions for trial in its summary judgment decision, and otherwise lacks merit.  Plaintiff's motions *in limine*, therefore, should be denied.

## ARGUMENT

## POINT I

### PLAINTIFF CANNOT EXCLUDE EVIDENCE OF HER SOCIAL SECURITY DISABILITY APPLICATION, DETERMINATION, AND BENEFITS

Plaintiff's request to bar evidence regarding her Social Security Disability Insurance ("SSDI") application and benefits is contrary to well-established law in the Second Circuit and even the cases that she cites.  Plaintiff argues that evidence regarding her SSDI benefits should not be admitted because, she asserts, the application for such benefits does not create an *estoppel* precluding an ADA claim and because, she asserts, SSDI benefits should not offset back pay under the collateral source rule. The relevance of a plaintiff's SSDI application and benefits, however, is not limited to estoppel and offset.  Thus, Courts have recognized that a plaintiff's SSDI application and benefits properly are admissible on issues regarding liability and damages. *See*, *e.g.*, *Mills v. Energy Transp. Corp.*, 29 Fed. Appx. 744, 745 (2d Cir. 2002); *Mitchell v. Washingtonville Cent. School Dist.*, 190 F.3d 1, 6-7 (2d Cir. 1999).  Plaintiff's SSDI application

and receipt of benefits are relevant and properly admissible with respect to several matters placed in issue by her claims.

A.      **Plaintiff's SSDI Application and Determination Are Relevant and Admissible**

Just over one month after her employment with State Farm had ended, on May 30, 2011, Plaintiff filed an application for SSDI benefits.  As part of that application, Plaintiff stated that, as of April 20, 2011, she was "unable to work because of illnesses, injuries or conditions."  She identified three such conditions, including the "chronic migraine" condition that is the basis for her disability claim in this lawsuit.  In response to the question "Now able to work," Plaintiff responded "No."  The Social Security Administration subsequently issued a determination that Plaintiff was disabled from April 20, 2011 and entitled to monthly disability benefits.  Plaintiff apparently continues to receive SSDI benefits.  Plaintiff's SSDI application and the SSDI determination of disability are plainly relevant to core liability and damages issues.

First, the evidence is relevant to whether Plaintiff was a qualified individual under the ADA.  Plaintiff's argument that this evidence should be excluded is contradicted even by the two cases on which she relies, *Mitchell*, *supra*, and *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795 (1999).  Plaintiff cites only the parts of *Mitchell* and *Cleveland* holding that, because of the different tests under the ADA and the Social Security Act, an individual's Social Security application claiming disability from employment does not create a *per se* estoppel under the ADA.  (Plaintiff's Brief at 2-3).  But, Plaintiff ignores the rest of the analysis in both *Mitchell* and *Cleveland,* which makes clear that, while not establishing estoppel as a matter of law, a plaintiff's SSDI application is probative evidence on the fact issue of whether the plaintiff was able to work.  As the Supreme Court explained in *Cleveland*:

> an ADA plaintiff cannot simply ignore her SSDI contention that
> she was too disabled to work. To survive a defendant's motion for

> summary judgment, she must explain why that SSDI contention is consistent with her ADA claim that she could "perform the essential functions" of her previous job, at least with "reasonable accommodation."
>
> *      *      *
>
> An ADA plaintiff bears the burden of proving that she is a "qualified individual with a disability"—that is, a person "who, with or without reasonable accommodation, can perform the essential functions" of her job. 42 U.S.C. § 12111(8). And a plaintiff's sworn assertion in an application for disability benefits that she is, for example, "unable to work" will appear to negate an essential element of her ADA case—at least if she does not offer a sufficient explanation. For that reason, we hold that an ADA plaintiff cannot simply ignore the apparent contradiction that arises out of the earlier SSDI total disability claim. Rather, she must proffer a sufficient explanation.
>
> *      *      *
>
> To defeat summary judgment, that explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement, the plaintiff could nonetheless "perform the essential functions" of her job, with or without "reasonable accommodation."

*Cleveland*, 526 U.S. at 798, 806-807. *Accord Mitchell*, 190 F.3d at 7 (following and quoting *Cleveland*, and affirming the District Court's finding that the plaintiff's SSDI application prevented the plaintiff from establishing the qualified individual element of his ADA claim).

Second, the evidence is relevant to whether Plaintiff was able to work during the periods for which she seeks back pay and front pay. Plaintiff cannot recover back pay or front pay for periods in which she was unable to work because of a disability. *See Schlant v. Victor Belata Belting Co.*, 2000 WL 1737945 at *1 (W.D.N.Y. Nov. 9, 2000) ("The rule in the Second Circuit is clear – *viz.*, no back pay is available to a Plaintiff during a period of disability"); *accord Thornley v. Penton Publishing, Inc.*, 104 F.3d 26, 31 (2d Cir. 1997) (no back pay "for a period when a plaintiff would have been unable, due to an intervening disability, to continue

employment"); *Saulpaugh v. Monroe Community Hospital*, 4 F.3d 134, 145 (2d Cir. 1992) (same). "The complete disability required for a grant of SSDI benefits [Social Security disability benefits] is incompatible with back pay." *Morse v. JetBlue Airways Corp.*, 2014 WL 2587576 (E.D.N.Y. 2014), *citing Thornley*, *supra*.

The analysis directed by *Cleveland* and *Mitchell*, therefore, applies on this point as well: even if Plaintiff's SSDI application and determination are not dispositive, this evidence is relevant to the issue of whether Plaintiff was able to work during periods for which she seeks back pay and front pay. As in *Cleveland* and *Mitchell*, it cannot simply be ignored. Instead, this evidence must be considered by the fact-finder, together with any explanation provided to Plaintiff, to determine if Plaintiff was able to work during periods for which she seeks back pay or front pay. *See Cleveland*, 526 U.S. at 798, 806-807. *Accord Mitchell*, 190 F.3d at 7

**B.     Plaintiff's Receipt of SSDI Benefits Is Not Barred by the Collateral Source Rule**

Plaintiff's argument that the collateral source rule bars evidence of her receipt of SSDI benefits – including the amount of benefits received – also fails. Plaintiff relies on *Eichel v. New York Central R.R. Co.*, 375 U.S. 253 (1963) and on cases addressing the admissibility of collateral benefits evidence "for the purpose of being setoff in the calculation of damages for lost earnings." (Plaintiff's Brief at 4). Even if Plaintiff's argument regarding the offset of liability were correct,[1] it does not bar the admission of her receipt of SSDI benefits for other purposes.

The Second Circuit has specifically addressed and rejected the argument – similar to that made by Plaintiff here – that *Eichel* requires the exclusion of collateral benefits evidence in all cases. As the Court has explained, "*Eichel* does not establish an absolute bar against the admission of such evidence for purposes other than mitigation of damages." *Mills v. Energy*

---

[1] Plaintiff's apparent assertion that Social Security benefits can never be offset against back pay

*Transp. Corp.*, 29 Fed. Appx. 744, 745 (2d Cir. 2002). Thus, for example, "such evidence may be admissible if the plaintiff puts his financial status at issue." *Santa Maria v. Metro-North Commuter R.R.*, 81 F.3d 265, 273 (2d Cir. 1996). As one Court explained, affirming the admission of collateral benefits evidence after the plaintiff had testified to financial reasons for his return to work and failure to return to his doctor:

> Defendant was not required to leave this testimony unchallenged and had the right to ask plaintiff on cross-examination whether he had received financial assistance, as affecting the credibility of his assertion. To have forbidden such cross-examination would have conferred on plaintiff the unparalleled right to give testimony on direct examination with immunity from inquiry on cross-examination. This is what distinguishes the present case from *Eichel*….

*Gladden v. Henderson Co.*, 385 F. 2d 480, 483 (3d Cir. 1967).

Here, Plaintiff has directly and specifically put in issue her financial condition during the period that she has been receiving substantial SSDI benefits. For example, Plaintiff testified in her deposition that her claimed emotional distress, for which she seeks compensatory damages, is based in part on financial stress following her discharge from State Farm. (Transcript of 10/15/13 Deposition of Plaintiff, filed at Docket No. 27-7, at pp. 99-100). Further, Plaintiff has asserted in her recent supplemental discovery responses that she has been unable to seek medical treatment because of her alleged loss of medical insurance – a point directly addressed by her SSDI benefits. In both respects, Plaintiff has squarely placed in issue her financial condition and, therefore, her receipt of SSDI benefits is properly admissible. *Santa Maria v. Metro-North Commuter R.R.*, *supra*.

As addressed in Point I.A, *supra*, SSDI evidence also is relevant both to whether Plaintiff was a qualified individual under the ADA and to whether Plaintiff was able to work during

periods for which she seeks back pay or front pay.   *See Cleveland*, *supra*; *Mitchell*, *supra*. Evidence of her SSDI benefits, therefore, also is admissible on these issues.

In addition, evidence of the receipt of SSDI benefits may be admissible on the issue of a plaintiff's failure to work.   In *Eichen*, the Court applied a Rule 403-type analysis to determine that the trial court did not abuse its discretion to exclude evidence of disability benefits on the issue of "malingering" under the facts of that case.   375 U.S. at 255.   Where circumstances or other evidence potentially connect a plaintiff's failure to work to the receipt of such benefits, however, courts have distinguished *Eichen* and have admitted evidence of the plaintiff's receipt of disability evidence as relevant to the plaintiff's "lack of motivation for returning to work." *McGrath v. Consolidated Rail Corp.*, 136 F.3d 838, 840-41 (1st Cir. 1998).   *See Mills v. Energy Transp. Corp.*, *supra* (following *McGrath* to hold that *Eichen* does not establish an absolute bar to admission of such evidence).   Thus, for example, such evidence was admitted where "[t]he evidence show[ed] that Plaintiff has done little to nothing to try and return to work"; the Court explained:

> The fact Plaintiff receives $3,600 each month in disability benefits is directly probative on the issue of Plaintiff's lack of motivation to return to work. The Court finds that the probative value of this evidence substantially outweighs any unfair prejudice. The Court will instruct the jury that it is to consider the evidence only on the issues of malingering and failure to mitigate damages.

*Clements v. Norfolk Southern Ry. Co.*, 2013 WL 255408 *2 (M.D. Ga. 2013).

Here, Plaintiff's SSDI benefits are directly relevant to her withdrawal from the workforce in two respects.   First, Plaintiff recently has asserted that she moved to Michigan in 2014 for financial reasons, which she appears to assert as the reason why she left the mitigating employment that she had until that time.   Plaintiff's receipt of SSDI benefits is relevant and properly admissible with respect to her financial condition at that time.   *See Santa Maria*, *supra*.

6

Second, the timing and circumstances of Plaintiff's withdrawal from the workforce establishes a clear relationship between that withdrawal from the workforce and her continued receipt of SSDI benefits, since Plaintiff's continuation of her mitigating employment beyond that time would have disqualified her from continuing to receive SSDI benefits.  Evidence of Plaintiff's receipt of SSDI benefits, therefore, is directly relevant to the issue of her failure to mitigate damages and should be admitted.

Plaintiff's argument that evidence regarding her SSDI benefits should be excluded under Rule 403 fails to address the significant issues on which this evidence is relevant.  As set forth above, this evidence is directly relevant and highly probative on matters placed in issue by Plaintiff's claims.  Any argument by Plaintiff regarding potential prejudice does not outweigh the probative value of this evidence and can be addressed by an appropriate limiting instruction.  The evidence of Plaintiff's receipt of SSDI benefits, as well as her SSDI application and SSDI determination, therefore, should be admitted as probative on the issues set forth in both Point I.A and Point I.B.

## POINT II

### PLAINTIFF'S MOTION TO INCLUDE MEDICAL TESTIMONY AND MEDICAL RECORDS

Plaintiff seeks an Order ruling on the admissibility of testimony by Dr. Eugene Merecki and Dr. Bruno Tolge, as well as admitting medical records as a business records exception.  Plaintiff has not disputed that the November 15, 2013 agreement between the parties precludes her from offering testimony by any doctor with respect to her emotional distress damages claim.  (*See* Docket No. 83, Exh. A).  Instead, Plaintiff states that "[t]he primary focus of their testimony will be Hampson's medical diagnosis of migraine headaches" as relating to the issue of whether she is disabled within the meaning of the ADA.  (Plaintiff's *In Limine* Brief at p. 5).

Plaintiff's motion is premature. The proposed presentation of testimony by Drs. Merecki and Tolge was addressed by the Court on its September 21, 2015 telephone conference with the parties and the process set forth in that conference. (Docket No. 87 and Docket Text Entry dated Sept. 21, 2015). Plaintiff is to provide, by October 2, 2015, a synopsis of what she intends to present through Dr. Merecki's and Dr. Tolge's testimony. The admissibility of specific testimony, therefore, can best be addressed after that is done, after Dr. Merecki is deposed, or upon the presentation of a specific proffer by Plaintiff.

Plaintiff's motion with respect to the proposed admission of medical records also is premature and insufficient. Whether as medical records under Rule 803(4) or as business records under Rule 803(6), the admission of records requires that the proponent of the evidence first establish the required foundation for and the authenticity of the records. *See*, *e.g.*, *Djangmah v. Falcione*, 2013 WL 6388364 at *5-6 (S.D.N.Y. Dec. 5, 2013) (addressing cases under both rules). "Facts supporting admissibility [under Rule 803(6)] must be supplied 'by the testimony of the custodian or other qualified witness or by certification' that complies with Federal Rule of Evidence 902." *Tutora v. Correctional Medical Care, Inc.*, 2012 WL 1898871 at *2 (N.D.N.Y. April 30, 2012).[2]

Here, Plaintiff does not identify what specific records she seeks to admit. The documents that have been produced as medical records are voluminous, often indecipherable, subject to

---

[2] Plaintiff cites, without discussion, *Rodriguez v. Village Green Realty, Inc.*, 788 F.3d 31 (2d Cir. 2015). Nothing in *Rodriguez* is contrary to the well-established requirements regarding the need for authentication and foundation for the admission of medical records. To the contrary, addressing the submission of medical records on a motion for summary judgment, to which the defendant first objected in a reply brief to which the plaintiff did not have the opportunity to respond, the Court acknowledged that authentication and foundation ultimately would need to be established, noting that the documents "seem like the type that likely could have been authenticated and certified, had plaintiffs had the opportunity to respond." 788 F.3d at 46-47.

interpretation, and include material that appears to have been received from other offices.  To date, there has been no testimony regarding these records.  Any ruling on the admissibility of such records, therefore, should abide an appropriate foundation and authentication for the specific records to be admitted, as well as a determination of whether the records are necessary in light of other evidence, or would be unnecessarily cumulative and potentially cause undue confusion.  Fed. R. Evid. 403.

## POINT III

### PLAINTIFF'S MOTION TO INCLUDE HER OWN
### TESTIMONY ON EMOTIONAL DISTRESS DAMAGES

Plaintiff moves to be allowed to testify consistent with case law permitting a plaintiff "to testify to 'garden variety' or 'lay' emotional distress."  (Plaintiff's *In Limine* Brief at p. 5). Plaintiff, however, does not make a specific proffer of testimony.  The admissibility of any such testimony should be addressed in the context of a specific proffer, and not a broad and generalized statement by Plaintiff.

## POINT IV

### PLAINTIFF'S MOTION TO INCLUDE DEPOSITION
### TESTIMONY OF LORI ERCOLINI AND RENE STREICHER

Plaintiff moves to admit certain deposition testimony by Ms. Ercolini and Ms. Streicher "[i]f these witnesses are not available for trial."  (Plaintiff's *In Limine* Brief at p. 6).  Plaintiff's motion is premature, as there is no showing or indication that either Ms. Ercolini or Ms. Streicher will be unavailable under Rule 804.

To the extent that Plaintiff's motion is reached, and with respect to any proposed testimony at trial, State Farm objects to Plaintiff's proposed introduction of testimony by Ms. Ercolini or Ms. Streicher on three grounds.

First, State Farm repeats the objections to specific questions as stated on the record in the deposition transcripts.  In addition, State Farm objects to certain lines of questioning on the grounds that they are not relevant.  For example, Plaintiff proffers testimony by Ms. Ercolini regarding having a supervisor in 2013 located in another office, without addressing the time period of 2010 or 2011, the time relevant to Plaintiff's claim, when Ms. Ercolini's supervisor was local to her.  (Docket No. 39, Ercolini Dep. Tr. at 11:8-12:3, 12:14-16, 13:9-13).   State Farm respectfully requests, therefore, that the Court rule on these properly preserved and presented objections before any admission of this testimony.

Second, the deposition excerpts identified by Plaintiff are incomplete and misleading. Therefore, in the event that Plaintiff is permitted to present any deposition testimony by Ms. Ercolini or Ms. Streicher, State Farm submits that it also must include the following counter-designations:

| Streicher Deposition: | Ercolini Deposition |
|---|---|
| 6:16-7:12 | 6:17-24 |
| 8:12-9:5 | 12:6-10 |
| 9:8-21 | 23:1-2 |
| 10:20-11:9 | 23:7-25:13 |
| 15:14-23 | |
| 20:15-17 | |
| 20:24-21:2 | |
| 24:9-24 | |
| 25:9-23 | |
| 26:2-27:17 | |

Third, whether presented by deposition or through the appearance of the witnesses, State Farm objects to Plaintiff's presentation of the proffered testimony by Ms. Ercolini or Ms. Streicher on the grounds that any probative value is outweighed by the risk of confusion and prejudice.  Fed. R. Evid. 403.  In its decision on State Farm's motion for summary judgment, the Court noted Plaintiff's submission of testimony by these witnesses:

> Plaintiff presented evidence that State Farm previously allowed two other employees, Lori Ercolini and Rene Streicher, who were also involved in processing claims (though in different capacities than Plaintiff) to perform work from home during various periods of time.

(Docket No. 40, at p. 20).  Although the Court gave Plaintiff the benefit of broad inferences to consider this evidence on the summary judgment motion, at trial Plaintiff must establish as a foundation for this evidence that Ms. Ercolini and Ms. Streicher were comparable to Plaintiff with respect to the asserted work-from-home issue.  *See*, *e.g.*, *Mobasher v. Bronx Community College*, 269 Fed.Appx. 71, 74-75 (2d Cir. 2008) (affirming trial court's exclusion of testimony regarding transfer of other employees where the plaintiff had not established that they were comparably situated).

Plaintiff cannot establish this foundation for admissibility at trial.  Neither Ms. Ercolini's nor Ms. Streicher's testimony provides evidence that the essential functions of an Auto Claims Representative could be performed at home.  It is undisputed that Ms. Ercolini was a Nurse Reviewer, not an Auto Claims Representative, and that her responsibilities materially differed from those of an Auto Claims Representative – including that she was not in a customer service role requiring availability to customers during scheduled hours and that her responsibilities did not involve being on the "phone path" system at State Farm for the routing of customer calls. (*Id.* at p. 20; Docket No. 39, Ercolini Dep. Tr. at 6, 23-24).  With respect to Ms. Streicher, it is undisputed that she did not work from home in place of working at the State Farm office during scheduled work hours.  Instead, Ms. Streicher, who was in a higher level position than Plaintiff and had additional work, testified without contradiction that her work from home consisted only of occasionally bringing work home to complete after work hours, not that she telecommuted; that this was "in addition to my normal work"; and that she could not perform the claims representative job from home. (Docket No. 30, Streicher Dep. Tr. at 13, 16, 25-27).  State Farm

11

submits, therefore, that any probative value of the proffered testimony of Ms. Ercolini and Ms. Streicher is outweighed by the likelihood of confusion and prejudice because they are not comparable in job responsibilities or in the nature or extent of the work performed from home.

**POINT V**

**PLAINTIFF'S MOTION TO INCLUDE EMAILS
FROM CERTAIN EMPLOYEES**

Plaintiff moves, without any foundation, to include in evidence six emails that she presents as having been sent by State Farm employees "regarding her work performance." (Plaintiff's *In Limine* Motion at pp. 7-8).   Contrary to Plaintiff's general and conclusory description, these emails are not performance documents or records.   They are casual emails from employees in other groups with, for example, a one-line statement thanking Plaintiff for providing help during a brief period when another employee was on vacation.   Plaintiff provides no foundation for their admission into evidence.   Therefore, Plaintiff's motion is, at best, premature and otherwise lacks merit.

Plaintiff's motion addresses only whether these emails are within an exception to the hearsay rule.   Even without regard to hearsay, however, these emails are not admissible because they do not address the performance issue that is relevant in this case – Plaintiff's lack of reliable and consistent attendance.   In any event, Plaintiff's motion does not establish the application of any hearsay exception.

First, Plaintiff seeks without merit to rely on the business records exception.   Under Rule 803(6), however, this exception does not apply to an email or other document merely because it was generated by a business's employees.   To the contrary, "admissibility under Rule 803(6) requires both that a memorandum have been 'kept in the course of a regularly conducted business activity' and also that it was the 'regular practice of that business activity to make the

12

memorandum....'"  *United States v. Freidin*, 849 F.2d 716, 719–20 (2d Cir.1988) (quoting Rule 803(6)).   This foundation "must be shown by the 'testimony of the custodian or other qualified witness' of the record. Finally, even if it meets these requirements, the memorandum cannot be admitted if the 'source of information or the method or circumstances of preparation indicate lack of trustworthiness.'"   *Id*.   Thus, courts have rejected the admission of emails when the proponent did not provide evidence establishing that the emails were generated and maintained as part of an established business practice or requirement.  *See*, *e.g.*, *United States v. Ferber*, 966 F.Supp. 90, 98 (D.Mass. 1997); *New York v. Microsoft*, 2002 WL 649951, at *2 (D.D.C. Apr. 12, 2002).

Here, Plaintiff provides no such foundation.   The emails are not regular performance records.   Nor is there any other evidence that the emails were prepared and maintained pursuant to an established business practice or requirement.   To the contrary, the emails are, on their face, informal and casual communications.   They are not business records.

Second, Plaintiff argues without merit that the emails fall within the present sense or excited utterance exceptions to the hearsay rule, under Rule 803(1) and 803(2).   Again, however, Plaintiff provides no foundation for her argument.   Nor can she.   A present sense expression must be "made while the declarant was perceiving the event or condition, or immediately thereafter."   Fed.R.Evid. 803(1).   The "near simultaneous expression of the explanation or description of the event with its perception" is necessary to the trustworthiness required for the exception to apply.  *Lorraine v. Markel American Ins. Co.*, 241 F.R.D. 534, 569  (D. Md. 2007). Thus, the statement must have been made with little chance for reflection. *Bemis v. Edwards*, 45 F.3d 1369, 1372 (9th Cir. 1995).   Even the case cited by Plaintiff recognizes that any lapse of time must be in the nature of a few minutes, not days.  *See Ferber*, 966 Supp. at 99.   Here,

13

Plaintiff has not established the immediacy required for the present sense exception to apply.  To the contrary, the emails, on their face, were not created contemporaneously with Plaintiff's work, nor are they limited to a present sense declaration of facts or an occurrence.  Indeed, Plaintiff seeks to present them as *assessments* of her performance – contradicting the immediacy and lack of reflection that is essential to the exception's application.

Similarly, Plaintiff cannot establish the excited utterance exception.  Rule 803(2) applies only where a statement is made "under the stress of excitement caused by the event or condition."  Fed.R.Evid. 803(2).  Plaintiff provides no evidence of such stress or excitement. Further, as addressed above, the emails lack the immediacy required for this exception to apply. *See Ferber*, *supra*.

For each of these reasons, therefore, Plaintiff's motion to admit these emails should be denied.

**POINT VI**

**PLAINTIFF'S MOTION TO EXCLUDE ANY EVIDENCE
OF LACK OF AWARENESS OF HER ALLEGED
DISABILITY/SERIOUS MEDICAL CONDITION**

Plaintiff's motion on this point essentially seeks the entry of summary judgment, without having moved for summary judgment, on the elements of her claim that require her to prove that she was disabled and that State Farm was aware of her disability.  Plaintiff's motion to exclude evidence on these issues lacks merit.

Plaintiff relies on the Court's statement in its decision on State Farm's motion for summary judgment based on the Statement of Material Facts submitted by State Farm in support of that motion.  Specifically, the Court referred to the following statements in that Statement of Material Facts:

14

17.    Beginning in 2005, Plaintiff began having a substantial number of Personal Sick Leave ("PSL") absences each year, both covered by the Family Leave Act ("FMLA") and "unprotected" absences not covered by the FMLA. (Diaz Decl. ¶¶5-8, 10-13, 20-22, and Exhs. B-E, G-J, L-N, and 3).

18.    Plaintiff's PSL absences were caused by a variety of conditions, including but not limited to migraine headaches.

(Docket No. 27-2, Statement of Material Facts, ¶¶17-18).   Plaintiff also relies on a draft memorandum by her supervisor that referred to her having "a serious medical condition … which has medically supported her PSL [Paid Sick Leave]."  (Docket No. 30-21).  State Farm's motion for summary judgment did not address the ADA/NYSHRL elements of disability or awareness of disability but, instead, addressed the elements of reasonable accommodation and failure to provide reasonable accommodation.

Plaintiff incorrectly argues that these statements in the context of State Farm's motion for summary judgment on other issues constituted a waiver.  A waiver is the "intentional relinquishment or abandonment of a known right."  *U.S. v. Parse*, 789 F.3d 83, 112 (2d Cir. 2015), *quoting Johnson v. Zerbst*, 304 U.S. 458, 464 (1938).  Nothing in these statements provides a "clear waiver" – as Plaintiff argues – on the issues of whether Plaintiff had a disability within the meaning of the ADA or the NYSHRL.  Indeed, there is no reference to disability. Further, nothing in these statements creates a waiver with respect to, for example, what any particular individuals at State Farm knew regarding any of Plaintiff's "variety of conditions" at any particular point in time.  For example, Plaintiff's supervisor's reference to "a serious medical condition" is necessarily subject to testimony by him regarding what he was referring to and the nature, source, and extent of his knowledge.  It also is necessarily subject to the determination, based on the entirety of the evidence, of whether Plaintiff's condition constituted a disability under the law and whether State Farm had knowledge that she had a disability.

Plaintiff's motion to foreclose evidence on these issues, therefore, lacks merit and must be denied.

**POINT VII**

**PLAINTIFF'S MOTION TO EXCLUDE EVIDENCE
THAT SHE FAILED TO PURSUE STATE FARM'S
ADA ACCOMMODATION REQUEST PROCESS**

Plaintiff's motion to exclude evidence regarding her failure to pursue State Farm's ADA Accommodation seeks to remove from trial a matter that this Court already has ruled presents fact issues for trial.  Specifically, the Court ruled on State Farm's motion for summary judgment that there were fact issues regarding whether Plaintiff or State Farm was responsible for Plaintiff's failure to pursue the interactive process.  (Docket No. 40, Decision and Order, at pp. 25-26).  In doing so, the Court rejected that argument that Plaintiff makes here – that she fulfilled her role in any interactive process once she raised the possibility of working from home.  (*Id*. at p. 25).  To the contrary, any such request by her would only have been the first step in an interactive process between the parties.  (*Id*.)  Thus, the ADA "envisions an 'interactive process' by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated," *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 99 (2d Cir. 2009), and "[a]n employee who is responsible for the breakdown of [the] interactive process may not recover for a failure to accommodate." *Nugent v. St. Lukes-Roosevelt Hosp. Ctr.*, 303 Fed.Appx. 943, 946 (2d Cir. 2008).  (*See* Docket No. 40, Decision and Order, at pp. 24-25).

Plaintiff's failure to pursue State Farm's established ADA Accommodation Request procedure is directly relevant to the reasonable accommodation issues.  Indeed, "once an employer has established a fixed set of procedures to request accommodations, the plaintiff-employee's failure to file a request through this procedure could preclude a claim for failure to accommodate." *Davis v. George Washington University*, 26 F.Supp.3d 103, 115 (D.D.C. 2014).

16

Plaintiff's cites no contrary authority, and there is no legal basis to simply disregard the employer's establishment of such a process and the employee's choice not to pursue it.  Further, whether or not Plaintiff's asserted informal oral request to work at home constituted a request for an accommodation, the issue is not simply whether she initially requested an accommodation. The issues include (a) whether she then chose to pursue that request and an interactive process to address reasonable accommodation, and (b) whether she failed to do so or otherwise caused a break down of the interactive process.  Plaintiff's choice not to pursue the established process provided by State Farm to address accommodation requests is directly relevant to these issues. Plaintiff's motion to exclude relevant evidence regarding this process and her decision not to pursue it, therefore, must be denied.

**POINT VIII**

**PLAINTIFF'S MOTION TO EXCLUDE
EVIDENCE ON UNDUE HARDSHIP**

Plaintiff essentially seeks summary judgment on the issue of undue hardship by excluding any evidence that her proposed accommodation of working from home would have been an undue hardship.  Plaintiff's sole grounds for this relief is that State Farm did not present any argument or evidence on undue hardship when it moved for summary judgment, which Plaintiff asserts created a waiver of that defense.  Plaintiff cites no authority supporting this position, and there is none.

State Farm was not required to address every potential defense in its motion for summary judgment.  To the contrary, State Farm properly directed its summary judgment motion to those issues on which it submitted that there was no question of fact and judgment as a matter of law was appropriate.  *See* Fed. R. Civ. P. 56.  State Farm properly did not move for summary judgment on issues that were subject to genuine questions of material fact on the existing record

or that would have been unnecessary to reach if summary judgment were entered on the elements of Plaintiff's claim addressed by the motion.  Instead, State Farm properly has preserved such issues for trial, including the issue of undue burden, most recently in the Joint Pretrial Statement and in its Trial Brief and Requests to Charge.  (Docket Nos. 53, 54, and 57).

Plaintiff, therefore, cannot extract a waiver from the fact that State Farm did not move for summary judgment on the undue burden issue.  Treating a summary judgment motion as a waiver of issues on which a party does not move would be incompatible with the limited scope of motions for summary judgment.  Further, in this case, it also would be incompatible with the fact that State Farm did move and present evidence on the threshold issue of whether working from home would have been a reasonable accommodation based, in part, on whether Plaintiff's job could have been performed at home.  There is no basis, therefore, to exclude evidence on undue hardship.

## POINT IX

### PLAINTIFF'S MOTION TO EXCLUDE
### REFERENCE TO DISMISSED CLAIMS

Plaintiff moves "to preclude the defendant and its attorneys from mentioning the dismissal of any claims/causes of action" dismissed by the Court on summary judgment. (Plaintiff's *In Limine* Brief at p. 10).  State Farm submits that any such ruling must be tailored to (1) apply to both parties, (2) address only mentioning to the jury the fact of Plaintiff's retaliation claims under the ADA and the NYSHRL and the fact of their dismissal, (3) not preclude any arguments to the Court regarding the scope of the issues in this case, (4) not preclude any reference to evidence or facts relevant to Plaintiff's credibility or the disability claims being tried, even if also relating to the dismissed retaliation claims, and (5) be subject to any evidence presented by Plaintiff opening the door to addressing the dismissal of the retaliation claims.

18

That said, State Farm does not intend to open to the jury on the dismissed claims and presently does not intend to induce any evidence as to what claims have been dismissed.  Of course, if State Farm's intent changes with respect to this issue, counsel will advise the Court and Plaintiff's counsel in advance.

## **CONCLUSION**

For the reasons set forth above, State Farm respectfully submits that Plaintiff's motions *in limine* should be denied.

Respectfully submitted,

MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
Attorneys for Defendant
State Farm Mutual Automobile Insurance Company


    /s/ Francis X. Dee
By:_____

      Francis X. Dee
      A Member of the Firm

Dated:  October 2, 2015